1
MORGAN, LEWIS & BOCKIUS LLP
Max Fischer, Bar No. 226003
2
Brian D. Fahy, Bar No. 266750
300 South Grand Avenue
3
Twenty-Second Floor
Los Angeles, CA 90071-3132
4
Tel: +1.213.612.2500
Fax: +1.213.612.2501
5
max.fischer@morganlewis.com
brian.fahy@morganlewis.com
6

7
MORGAN, LEWIS & BOCKIUS LLP
Brian D. Berry, Bar No. 229893
8
Miranda M. Rowley, Bar No. 328173
One Market, Spear Street Tower
9
San Francisco, CA 94105-1596
Tel: +1.415.442.1000
10
Fax: +1.415.442.1001
brian.berry@morganlewis.com
11
miranda.rowley@morganlewis.com

12
Attorneys for Defendant
AMAZON.COM, INC. and
13
AMAZON LOGISTICS, INC.

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16
| ELSON MARCELO, PETR BOGOPOLSKIY, JASON SALES, ASHLEY ELLIS, DAVID SIMARD, THIEN LUONG, RHONDA FELIX, STEPHANIE FRIEDMAN, WORKINEH WOLIE, ABDUL REHMAN, DAVID SAMRA, MOHAMMED SHAIK, SALEH ALBADWI, TANESHA CALDWELL, STARR CAMPBELL, and SERGIO GARNICA, | Case No. 3:21-CV-07843-JD |
|---|---|

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, TO STAY, DISMISS OR TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Plaintiffs,

v.

AMAZON.COM, INC., and
AMAZON LOGISTICS, INC.,

Defendants.

[*Proposed Order, Request for Judicial Notice filed concurrently herewith*]

Hearing Date: February 24, 2022
Time:          10 a.m.
Courtroom:   11, 19th Floor

Honorable James Donato

16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

AMAZON'S MOTION TO
COMPEL ARBITRATION

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 24, 2022, at 10:00 a.m. (or as soon thereafter as the matter may be heard in Courtroom 11, 19th Floor, of the above-entitled Court), Defendants Amazon.com, Inc., and Amazon Logistics, Inc. (collectively "Defendants"), by and through their counsel, will and hereby do move the Court compel arbitration and stay this action.  Under the Federal Arbitration Act ("FAA") 9 U.S.C. §§ 1 *et seq.* and applicable state law, Plaintiffs agreed to and are therefore obligated to arbitrate their claims against Defendants on an individual basis. Further, the Court's inherent powers provide an independent basis for enforcing Plaintiffs' arbitration agreements.  Alternatively, this action should be transferred, stayed or dismissed under the first-to-file rule because it is duplicative of several previously-filed pending cases, all of which assert the identical theory – misclassification of California-based Amazon Flex delivery partners. These pending cases include class and/or PAGA claims, brought on behalf of the putative aggrieved employees, that include Plaintiffs here.  Thus, if this Court does not compel arbitration, at a minimum, this case should be stayed, transferred or dismissed under the first-to-file rule to avoid duplicative and wasteful litigation.

This motion will be based upon this Notice of Motion, the Memorandum of Points and Authorities in support thereof, the Request for Judicial Notice and exhibits thereto, and on such evidence and argument as may be presented at the time of the hearing on the motion.

Dated:  December 23, 2021

MORGAN, LEWIS & BOCKIUS LLP

By _____*/s/ Brian D. Fahy*_____
Max Fischer
Brian D. Berry
Brian D. Fahy
Miranda M. Rowley

Attorneys for Defendants
AMAZON.COM INC and
AMAZON LOGISTICS, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

AMAZON'S MOTION TO
COMPEL ARBITRATION

1

**TABLE OF CONTENTS**

2                                                                                        <u>**Page**</u>

3

4   I.      INTRODUCTION ......................................................................................... 1

5   II.     FACTUAL BACKGROUND ...................................................................... 2

6           A.      The Amazon Flex Program and Terms of Service. .................................... 2

7           B.      Plaintiffs' Claims. ................................................................................. 6

8   III.    ARGUMENT ............................................................................................. 8

9           A.      The Court Should Compel Arbitration. ...................................................... 8

10                  1.      Plaintiffs Agreed to Arbitrate These Disputes. ........................... 8

11                  2.      Plaintiffs' Agreements to Arbitrate Are Enforceable............................. 10

12                          a.      The FAA Requires Enforcing Plaintiffs' Agreements. .................. 10

13                          b.      State Law Requires Enforcing Plaintiffs' Agreements. ................. 13

14                          c.      The Court's Inherent Powers Provide an Independent Basis
                                    for Enforcing Plaintiffs' Arbitration Agreements. ......................... 20

15
          B.      Alternatively, the First-to-File Rule Requires a Transfer, Dismissal, or Stay of
16                This Action.......................................................................................... 21

17   IV.    CONCLUSION .......................................................................................... 24

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

AMAZON'S MOTION TO
COMPEL ARBITRATION

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Abram v. C.R. Eng., Inc.*,
  No. 20-cv-764, 2020 WL 5077373 (C.D. Cal. June 23, 2020) ............................................. 14

*Adams v. Parts Distribution Xpress, Inc.*,
  No. 20-cv-697, 2021 WL 1088231 (E.D. Pa. Mar. 22, 2021)................................................. 18

*Arakelian v. Mercedes-Benz USA, LLC*,
  No. CV 17-06240, 2018 WL 6422649 (C.D. Cal. June 4, 2018)........................................... 21

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  6 P.3d 669 (Cal. 2000) .......................................................................................................... 20

*Atwood v. Rent-A-Ctr. E., Inc.*,
  No. 15-cv-1023, 2016 WL 2766656 (S.D. Ill. May 13, 2016)......................................... 18, 19

*Bean v. ES Partners, Inc.*,
  No. 20-62047-CIV, 2021 WL 1239899 (S.D. Fla. Apr. 4, 2021) ......................................... 12

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015)......................................................................................... 10, 16

*Capriole v. Uber Techs., Inc.*,
  7 F.4th 854 (9th Cir. 2021)............................................................................................... 12, 13

*Carder v. Carl M. Freeman Cmtys., LLC*,
  Civ. No. 3319-VCP, 2009 WL 106510 (Del. Ch. Jan. 5, 2009) ...................................... 10, 16

*Castillo v. CleanNet USA, Inc.*,
  358 F. Supp. 3d 912 (N.D. Cal. 2018) ................................................................................... 11

*Chappel v. Lab. Corp. of Am.*,
  232 F.3d 719 (9th Cir. 2000)...................................................................................... 13, 19, 20

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000)........................................................................................... 8, 16

*Cole v. Burns Int'l Sec. Servs.*,
  105 F.3d 1465 (D.C. Cir. 1997) ............................................................................................ 21

*Davidson v. Hensen*,
  954 P.2d 1327 (Wash. 1998)............................................................................................ 17, 18

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ............................................................................................................... 10

AMAZON'S MOTION TO
COMPEL ARBITRATION

*Diaz v. Mich. Logistics Inc.*,
    167 F. Supp. 3d 375 (E.D.N.Y. 2016) ................................................................. 13

*E. & J. Gallo Winery v. EnCana Corp.*,
    503 F.3d 1027 (9th Cir. 2007)............................................................................. 19

*Ekin v. Amazon Servs., LLC*,
    84 F. Supp. 3d 1172 (W.D. Wash. 2014)............................................................ 16

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ........................................................................................ 10

*In re Facebook Biometric Info. Privacy Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) (Donato, J.) ........................................... 9

*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990) ............................................................................................ 14

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) .............................................................................................. 8

*Gardensensor, Inc. v. Stanley Black & Decker, Inc.*,
    No. 12-cv-3922, 2012 WL 12925714 (N.D. Cal. Oct. 25, 2012) ........................ 14

*Graham v. State Farm Mut. Auto. Ins. Co.*,
    565 A.2d 908 (Del. 1989) ................................................................................... 15

*In re Grice*,
    974 F.3d 950 (9th Cir. 2020)............................................................................... 12

*Hamrick v. Partsfleet, LLC*,
    1 F.4th 1337 (11th Cir. 2021).............................................................................. 11

*Harper v. Amazon.com Servs., Inc.*,
    12 F.4th 287 (3d Cir. 2021) (Matey, J., concurring)...................................... 11, 13

*Kauffman v. U-Haul Int'l, Inc.*,
    No. 16-cv-4580, 2018 WL 4094959 (E.D. Pa. Aug. 28, 2018) ........................... 18

*Keller v. Amazon.com, Inc.*,
    No. 17-cv-2219, 2019 WL 13113043 (N.D. Cal. Oct. 23, 2019) ..................... 7, 24

*Keystone Land & Dev. Co. v. Xerox Corp.*,
    94 P.3d 945 (Wash. 2004)..................................................................................... 8

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
    313 U.S. 487 (1941) ............................................................................................ 18

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)....................................................................................... 20, 24

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

AMAZON'S MOTION TO
COMPEL ARBITRATION

*Maldonado v. Sys. Servs. of Am., Inc.*,
  No. 09-cv-542, 2009 WL 10675793 (C.D. Cal. June 18, 2009) .................................. 7, 17, 19

*Mason-Dixon Lines, Inc. v. Local Union No. 560*,
  443 F.2d 807 (3d Cir. 1971) ........................................................................................... 20

*MediVas, LLC v. Marubeni Corp.*,
  741 F.3d 4 (9th Cir. 2014) .............................................................................................. 21

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ........................................................................................................ 8

*Mohammad v. T-Mobile USA, Inc.*,
  18-CV-00405-KJM-DB, 2018 WL 6249910 (E.D. Cal. Nov. 29, 2018)........................... 16

*New Prime Inc. v. Oliveira*,
  139 S. Ct. 532 (2019) ..................................................................................................... 21

*O'Shea v. Maplebear Inc.*,
  508 F. Supp. 3d 279 (N.D. Ill. 2020) .............................................................................. 12

*Ortiz v. Walmart, Inc.*,
  No. 20-CV-05052, 2020 WL 5835323 (C.D. Cal. Sept. 18, 2020) ................................. 21

*Osborn ex rel. Osborn v. Kemp*,
  991 A.2d 1153 (Del. 2010) ............................................................................................... 8

*Palcko v. Airborne Express, Inc.*,
  372 F.3d 588 (3d Cir. 2004).................................................................................. 14, 17, 18

*Parker v. New Prime, Inc.*,
  No. 20-cv-3298, 2020 WL 6143596 (C.D. Cal. June 9, 2020) ........................................ 14

*Peters v. Amazon Servs., LLC*,
  669 F. App'x 487 (9th Cir. 2016) .................................................................................... 16

*Ponce v. Amazon.com Servs. Inc.*,
  No. 19-CV-288-RS (N.D. Cal.) ................................................................................... 7, 23

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017)......................................................................................... 20

*Puentes v. Amazon.com Servs., LLC*,
  No. 21-cv-414, 2021 WL 5984867 (C.D. Cal. Sept. 30, 2021) ........................... 8, 22, 23, 24

*Ratajesak v. New Prime, Inc.*,
  No. 18-cv-9396, 2019 WL 1771659 (C.D. Cal. Mar. 20, 2019)....................................... 14

*Rittmann v. Amazon.com, Inc.*,
  971 F.3d 904 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021) .................................. 1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

AMAZON'S MOTION TO
COMPEL ARBITRATION

*Rodriguez v. Am. Techs., Inc.*,
    39 Cal. Rptr. 437 (Ct. App. 2006) ........................................................................... 10

*Ruiz v. Sysco Food Servs.*,
    18 Cal. Rptr. 3d 700 (Cal. Ct. App. 2004) .............................................................. 19

*SBC Interactive, Inc. v. Corp. Media Partners*,
    714 A.2d 758 (Del. 1999) ........................................................................................ 15

*Southwest Airlines Co. v. Saxon*,
    21-309 (U.S.) ............................................................................................................. 1

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,
    17 Cal. Rptr. 2d 713 (Cal. Ct. App. 1993) .............................................................. 18

*Sw. Airlines Co. v. Saxon*,
    No. 21-309 (U.S. Dec. 10, 2021) ............................................................................ 13

*Vandenberg v. Superior Court*,
    982 P.2d 229 (Cal. 1999) ........................................................................................ 19

*Vargas v. Delivery Outsourcing, LLC*,
    No. 15-cv-03408-JST, 2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ..................... 11

*Waithaka v. Amazon.com, Inc.*,
    966 F.3d 10 (1st Cir. 2020) ..................................................................................... 16

*Wallace v. Grubhub Holdings, Inc.*,
    970 F.3d 798 (7th Cir. 2020) .............................................................................. 1, 12

*Webber v. Uber Techs., Inc.*,
    No. 18-cv-2941, 2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) ............................. 9

**Statutes**

9 U.S.C. § 1 ................................................................................................................ *passim*

9 U.S.C. § 2 ........................................................................................................................ 10

9 U.S.C. § 3 ........................................................................................................................ 21

Cal. Civ. Code § 1550 ......................................................................................................... 8

Cal. Civ. Proc. Code § 1281 ............................................................................................. 19

Cal. Civ. Proc. Code § 1281.4 .......................................................................................... 21

Del. Code tit. 10, § 5703 ............................................................................................ 15, 21

Delaware Uniform Arbitration Act ................................................................................... 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

AMAZON'S MOTION TO
COMPEL ARBITRATION

Fair Labor Standards Act ............................................................................. 6

Federal Arbitration Act ..................................................................... 1, 5, 16

Uniform Arbitration Act ............................................................................ 15

WASH. REV. CODE § 7.04A.060(1) ..................................................... 17, 18

**Other Authorities**

AM. ARB. ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION
    PROCEDURES R-7 (2016), https://adr.org/sites/default/files/
    Commercial%20Rules.pdf ................................................................... 5

RESTATEMENT § 188 ................................................................................. 19

RESTATEMENT § 188(2) ............................................................................. 18

*Restatement (Second) of Conflict of Laws* § 188 (1971) ..................... 18, 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

AMAZON'S MOTION TO
COMPEL ARBITRATION

1  **I.    INTRODUCTION**

2      Plaintiffs are sixteen individuals who all agreed to individual arbitration when they signed

3  up to make deliveries with the Amazon Flex program and assented to the Amazon Flex Independent

4  Contractor Terms of Service.  They now seek to litigate claims that Defendants (collectively, "Am-

5  azon") violated state and federal wage and hour laws.  But this Court should compel Plaintiffs to

6  do what they agreed to do: pursue their claims in individual arbitration.

7      As local delivery drivers who deliver food and goods within self-selected geographic areas,

8  Plaintiffs and other Amazon Flex delivery partners are not among the limited classes of workers

9  like "seamen" and "railroad workers" who are "engaged in foreign or interstate commerce" so as

10  to be exempt from the broad reach of the Federal Arbitration Act ("FAA").  9 U.S.C. § 1.  Although

11  *Rittmann v. Amazon.com, Inc.* held that Amazon Flex delivery partners were engaged in interstate

12  commerce by making intrastate deliveries of goods that are supposedly in a continuous "stream of

13  commerce" between states, this motion is supported by a different factual record.  971 F.3d 904,

14  915-16 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021).  The evidence here shows that Amazon

15  Flex delivery partners often deliver food, groceries, and items from local stores like Whole Foods

16  Market, and can choose to perform those sorts of deliveries exclusively if that is what they prefer.

17  Delivery of interstate packages is not an essential part of the Amazon Flex program, and in that

18  way Amazon Flex delivery partners resemble the food delivery drivers who—as the Ninth Circuit

19  and other courts widely hold—fall outside the narrow reach of Section 1's exemption.  *E.g.*, *id.* at

20  915; *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802-03 (7th Cir. 2020).  By contrast, the

21  Amazon Flex program did not include Whole Foods grocery deliveries at the time Amazon moved

22  to compel in *Rittmann*, and that motion did not rest on evidence about those deliveries.  Under

23  today's version of the program, which is materially different from the version of the program that

24  was at issue in *Rittmann*, Amazon Flex delivery partners are not engaged in interstate commerce

25  under the FAA exemption.  But if the Court has any doubts about the applicability of the FAA, it

26  should stay this case pending the Supreme Court's anticipated decision in *Southwest Airlines Co.*

27  *v. Saxon*, 21-309 (U.S.), for the reasons presented in Amazon's concurrently filed motion to stay.

28

AMAZON'S MOTION TO
COMPEL ARBITRATION

Second, regardless of whether the FAA applies, Plaintiffs' arbitration agreements are enforceable under state law and the Court's inherent powers. Ten of the Plaintiffs are bound by different and newer versions of the Terms of Service than the plaintiff in *Rittmann*, and the newer versions' choice-of-law provisions, unlike the version in *Rittmann*, unambiguously select Delaware law to govern arbitration if the FAA cannot apply. Six of the Plaintiffs are bound by only the agreement that was at issue in *Rittmann*, but for reasons not considered by the *Rittmann* courts, Washington law still requires compelling them to arbitration. And even if this Court were to disregard the parties' choice of Delaware law or Washington law for any reason, in all events, California law would govern and would also require enforcing all Plaintiffs' agreements to arbitrate. The Court should therefore compel individual arbitration whether or not the FAA applies.

Third, if this Court declines to compel all Plaintiffs to arbitration, it should nonetheless dismiss, stay, or transfer this case because of its near-complete overlap with earlier-filed putative class actions pending in Western District of Washington, including *Rittmann*. There is no reason to permit any of these Plaintiffs to proceed concurrently on entirely duplicative theories of relief, which would merely result in the unnecessary expenditure of judicial and party resources. The first-to-file rule exists to avoid such waste, and the Court should follow that rule here.

## II. FACTUAL BACKGROUND

### A. The Amazon Flex Program and Terms of Service.

Amazon offers products for sale, including through its website, its mobile applications, and retail locations like Whole Foods Market, which Amazon acquired in 2017. *See* Declaration of Alexa Hawrysz ("Hawrysz Decl."), ¶¶ 5-6. Amazon Logistics, Inc. contracts with, among others, individual independent contractor Delivery Partners like Plaintiffs through a smartphone application-based program called Amazon Flex to deliver orders of food and goods locally to customers using their personal vehicles. Hawrysz Decl. ¶¶ 5-7. To sign up to make Amazon Flex deliveries, prospective drivers must download the app on their smartphones, create an account, enter the zip code in which they wish to make deliveries, and accept the Amazon Flex Independent Contractor

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

AMAZON'S MOTION TO
COMPEL ARBITRATION

Terms of Service ("TOS"), which are presented on the app for the prospective Delivery Partner to review.  Hawrysz Decl. ¶¶ 9-10.

Four versions of the TOS are relevant here, although the first two, which governed the Amazon Flex program between September 2016 and October 2019, have no material differences for purposes of this case and are collectively referred to, for simplicity, as "First TOS."  Hawrysz Decl. ¶ 12; *id.*, Exs. A, B.  All sixteen Plaintiffs originally signed up to make Amazon Flex deliveries between September 27, 2016 and June 12, 2019 and therefore accepted the First TOS.  *Id.* ¶¶ 11-12, 20-35.  The Amazon Flex app presented Plaintiffs with the First TOS in its entirety, and Plaintiffs were free to spend as much time as they wished reviewing its terms before accepting it.  *Id.* ¶¶ 15-17.  Plaintiffs clicked a button stating that they agreed to and accepted the First TOS.  *Id.* ¶ 17.  Afterward, they saw a new screen, which separately set forth an agreement to arbitrate for their review.  *Id.* ¶ 18.  Again they clicked a button stating that they agreed to and accepted the contractual terms.  *Id.*  The First TOS gave Plaintiffs 14 days to opt out of arbitration by simply sending an email to an Amazon email address that the First TOS provided, but they did not do so.  *See id.* ¶¶ 19-35; First TOS § 11(k).

The First TOS also contained a modifications provision:

> Amazon may modify this Agreement . . . at any time by providing notice to you through the Amazon Flex app or otherwise providing notice to you.  You are responsible for reviewing this Agreement regularly to stay informed of any modifications.  If you continue to perform the Services or access Licensed Materials (including accessing the Amazon Flex app) after the effective date of any modification to this Agreement, you agree to be bound by such modifications. . . .

First TOS § 13.  It stated that Amazon would communicate by email, among other channels, and that in accepting the agreement, Plaintiffs "consent[ed] to Amazon communicating with [them] concerning the Program via any or all of these means."  First TOS § 14.  Plaintiffs likewise accepted "responsibility to keep [their] email address and phone number current by updating the information [they] provided to Amazon" when necessary.  *Id.*

The next relevant version of the TOS, the "Second TOS," began to govern the Amazon Flex program in October 2019.  Hawrysz Decl. ¶ 13; *id.*, Ex. C.  At that point, Amazon sent an email to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

AMAZON'S MOTION TO
COMPEL ARBITRATION

the email addresses that existing Amazon Flex account holders, including Plaintiffs, had agreed to keep current for receiving communications from Amazon.  Hawrysz Decl. ¶ 37; First TOS § 14.  This email alerted Plaintiffs about the update in the TOS, stating, "We're emailing you to let you know that we recently updated our Amazon Flex Terms of Service.  By continuing to use the Amazon Flex app, you accept the Terms of Service, as updated."  Hawrysz Decl., Ex. C.  The email gave Plaintiffs notice and an opportunity to review the new terms of service.  *Id.*  After receiving this email, ten of the sixteen Plaintiffs—Albadwi, Bogopoliskiy, Caldwell, Campbell, Garnica, Luong, Rehman, Samra, Simard, and Wolie—went on to schedule delivery blocks and complete Amazon Flex deliveries.  *Id.* ¶¶ 38-47.

The final relevant version, the "Third TOS," took effect in 2021.  *Id.* ¶ 14.  At that point, California delivery partners holding active Amazon Flex accounts received a notification in the Amazon Flex app indicating that they had to read and accept the new agreement to continue performing deliveries.  *Id.* ¶ 48.  Much like the initial signup process, they saw the complete agreement and after scrolling through it had to click a button saying that they agreed to and accepted the terms.  *Id.* ¶ 49.  Three of the sixteen Plaintiffs—Albadwi, Bogopolskiy, and Rehman—accepted the Third TOS through this process.  *Id.* ¶¶ 50-52.

In each of these TOS versions, Section 11(a) set forth a mutual agreement between the contracting parties to arbitrate disputes "BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT."  First TOS § 11(a); Second TOS § 11(a); Third TOS § 11(a).  This arbitration agreement applies to "ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM[,] OR TO YOUR PERFORMANCE OF SERVICES."  First TOS § 11(a); Second TOS § 11(a); Third TOS § 11(a).  The parties also agreed that, "TO THE EXTENT PERMITTED BY LAW, . . . ANY DISPUTE RESOLUTION PROCEEDINGS WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS OR COLLECTIVE BASIS."  First TOS § 11(b); Second TOS § 11(b); Third TOS § 11(b).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

AMAZON'S MOTION TO
COMPEL ARBITRATION

Beyond Section 11, the agreements also include mutual promises to arbitrate in their opening paragraphs, even before Section 1.  For example, the First TOS's second paragraph says:

> YOU AND AMAZON AGREE TO RESOLVE DISPUTES BETWEEN YOU AND AMAZON ON AN INDIVIDUAL BASIS THROUGH **FINAL AND BINDING ARBITRATION**, UNLESS YOU OPT OUT OF ARBITRATION WITHIN 14 CALENDAR DAYS OF THE EFFECTIVE DATE OF THIS AGREEMENT, AS DESCRIBED BELOW IN SECTION 11.  If you do not agree with these terms, do not use the Amazon Flex app or participate in the Program or provide any Services.

First TOS at 1.

One relevant difference between the First TOS and the Second and Third TOS appears in Section 12, the "Governing Law" provision.  The First TOS says that "[t]he interpretation of this Agreement is governed by the law of the state of Washington without regard to its conflict of laws principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law."  First TOS § 12.  The Second TOS, on the other hand, says "[t]he interpretation of this Agreement is governed by the law of the state of Delaware without regard to its conflict of laws principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law," but then continues:  "If, for any reason, the Federal Arbitration Act is held by a court of competent jurisdiction not to apply to Section 11 of this Agreement, the law of the state of Delaware will govern Section 11 of this Agreement, including without limitation the common law of contracts of such state if any statute could be interpreted to limit the right of Amazon or you to arbitrate pursuant to Section 11 of this Agreement."  Second TOS § 12.  Section 12 of the Third TOS similarly selects the application of Delaware law, including for the arbitration provision in Section 11 if the FAA is held inapplicable.  Third TOS § 12.

Besides this selection of Delaware arbitration law as a fallback to the FAA, another notable difference between the agreements is that the Second and Third TOS delegate disputes over arbitrability to the arbitrator.  They provide that arbitration will be conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), which empower the arbitrator to decide questions of arbitrability.  Second TOS § 11(k); Third TOS § 11(i); *see* AM. ARB. ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R-7, at 13 (2016), https://adr.org/

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

AMAZON'S MOTION TO
COMPEL ARBITRATION

sites/default/files/Commercial%20Rules.pdf.  In addition, they explain that while courts will re-solve disputes about the validity and enforceability of the Second and Third TOS as a whole and whether the agreements are exempt from the FAA, the "arbitrator must resolve all other disputes, including the arbitrability of claims" under Section 11(a).  Second TOS § 11(*l*); Third TOS § 11(j). The First TOS, in contrast, refers arbitrability disputes to the court.  First TOS § 11(j).

## B.   Plaintiffs' Claims.

Plaintiffs filed this action on October 6, 2021.  The complaint asserts various violations of federal and state labor and wage laws.  Plaintiffs allege that Amazon misclassified them as inde-pendent contractors.  Dkt. #1 ("Compl."), ¶ 27.

Plaintiffs allege that they are owed compensation for the "burden of transportation, traffic, and waiting times" for shifts to become available on the Amazon app.  Compl. ¶ 28.  They also allege that because of their alleged misclassification, "Amazon requires its couriers to pay for many expenses necessary to perform their jobs, including expenses for vehicle maintenance, gas, tolls, and smart phones with data plans."  Compl. ¶ 38.  Due to the "expenses couriers incur in the regular course of their jobs and extra time worked outside of their blocks," Plaintiffs allege their "wages often fall below federal, state, and local minimum wage laws."  Compl. ¶ 39.  They seek relief under the federal Fair Labor Standards Act ("FLSA") and assorted provisions of the California Labor Code and Industrial Welfare Commission's Wage Orders.  Compl. ¶¶ 61-119.

The same basic misclassification theory and legal claims are already pending in the U.S. District Court for the Western District of Washington in several earlier-filed putative class actions. The first such action was filed in that court on October 4, 2016, and on December 1, 2016, it was expanded to include claims based on the alleged misclassification of California Amazon Flex driv-ers.  *See* First Amended Complaint, *Rittmann v. Amazon.com, Inc.*, No. C16-1554-JCC (W.D. Wash. Dec. 1, 2016), ECF No. 33.  *See* Request for Judicial Notice ("RJN"), Ex. A.  The operative complaint in *Rittmann* alleges that Amazon Flex drivers were misclassified as independent con-tractors, resulting in violations of the California Labor Code, the Fair Labor Standards Act, and other state laws, and the *Rittmann* plaintiffs seek to represent a class (among others) of "all delivery

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

AMAZON'S MOTION TO
COMPEL ARBITRATION

drivers who have contracted directly with Amazon to provide delivery services in California between three years since they brought this complaint and the date of final judgment in this matter." *See* Third Amended Complaint ¶ 62, *Rittmann v. Amazon.com, Inc.*, No. C16-1554-JCC (W.D. Wash. Dec. 20, 2021), ECF No. 188; RJN, Ex. B.  Since *Rittmann*'s filing, several other actions have been consolidated with it, including actions premised on the alleged misclassification of California Amazon Flex drivers.  *See* Order Consolidating Cases, *Rittmann v. Amazon.com, Inc.*, No. C16-1554-JCC (W.D. Wash. Nov. 14, 2017), ECF No. 87; RJN, Ex. C; Minute Order to Consolidate, *Rittmann v. Amazon.com, Inc.*, No. C16-1554-JCC (W.D. Wash. June 10, 2019), ECF No. 132; RJN, Ex. D; Order to Consolidate, *Rittmann v. Amazon.com, Inc.*, No. C16-1554-JCC (W.D. Wash. July 9, 2019), ECF No. 134; RJN, Ex. E.

Meanwhile, three similar actions—also filed before this one—were transferred from this District to the Western District of Washington but are not formally consolidated with *Rittmann*. *See Keller v. Amazon.com, Inc.*, No. 19-CV-2219-RS (N.D. Cal.); *Ponce v. Amazon.com Servs. Inc.*, No. 19-CV-288-RS (N.D. Cal.); *Diaz v. Amazon.com, Inc.*, No. 20-CV-7792-VC (N.D. Cal.). The *Keller* action began on March 13, 2017 and asserts assorted putative class claims under California law premised on the same misclassification theory as *Rittmann*.  *See* Complaint, *Keller v. Amazon.com, Inc.*, No. C19-1719-JCC (W.D. Wash. Apr. 20, 2017), ECF No. 1-1; RJN, Ex. F.  The *Ponce* action began on November 1, 2018 and asserts similar claims and theories.  *See* Complaint, *Ponce v. Amazon.com Servs. Inc.*, No. C19-1718-JCC (W.D. Wash. Jan. 16, 2019), ECF No. 1-1; RJN, Ex. G.  And the Diaz action began on August 21, 2020 and also makes similar allegations. *Diaz v. Amazon.com, Servs., Inc.*, No. 2:21-cv-00419-JCC, ECF No. 1-1; RJN, Ex. H.  The first two of these cases were related to each other and then transferred together by Judge Seeborg to the Western District of Washington because their claims "are identical to, or closely mirror, the claims in *Rittmann*[.]" *Keller v. Amazon.com, Inc.*, No. 17-cv-2219, 2019 WL 13113043, at *2 (N.D. Cal. Oct. 23, 2019).  The parties in *Diaz* stipulated to transfer because that "matter and the consolidated *Rittmann* and *Keller/Ponce* matters possess sufficient similarity of parties and issues to warrant application of the first-to-file rule given that:  (1) Plaintiffs are members of the proposed putative

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

AMAZON'S MOTION TO
COMPEL ARBITRATION

classes in *Rittmann* and *Keller/Ponce*, (2) the Defendants are the same, and (3) the issues to be tried overlap significantly, including the core theory of liability advanced in all cases that Amazon Delivery Partners are misclassified as independent contractors."  Joint Stipulation and Order to Transfer Matter Pursuant to First-to-File Rule at 2, *Diaz* (N.D. Cal. Mar. 19, 2021) (No. 20-CV-7792-VC), ECF No. 21; RJN, Ex. I.  Judge Chhabria approved this stipulation and ordered transfer.  *See id.*, ECF No. 22; RJN, Ex. J.

In addition, yet another duplicative action involving California Amazon Flex drivers arrived in the Western District of Washington on transfer from the Central District of California.  *Puentes v. Amazon.com Servs., LLC*, No. 21-cv-414, 2021 WL 5984867, at *1 (C.D. Cal. Sept. 30, 2021).

## III.   ARGUMENT

### A.   The Court Should Compel Arbitration.

Plaintiffs agreed to arbitrate their dispute with Amazon.  This Court should enforce the agreement and compel Plaintiffs to individual arbitration with Amazon under the FAA, state law, or this Court's inherent authority to control its docket.

#### 1.   Plaintiffs Agreed to Arbitrate These Disputes.

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also, e.g.*, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  To make this determination, courts "apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under any potentially applicable set of state-law principles—including those of California, Delaware, and Washington—Plaintiffs agreed to arbitrate any claim or dispute related to Amazon Flex through offer, acceptance, consideration, and language showing an intent to arbitrate.  *See, e.g.*, *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) (articulating the basic requirements for contract formation); *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004) (same); CAL. CIV. CODE § 1550 (same).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

AMAZON'S MOTION TO
COMPEL ARBITRATION

Here, all sixteen Plaintiffs agreed to the First TOS between September 2016 and June 2019: they affirmatively clicked their assent to the agreement as a whole and the arbitration provision in signing up to perform Amazon Flex deliveries. *See supra* p. 3.

Ten Plaintiffs, moreover, agreed to the Second TOS by continuing performing deliveries in October 2019 after receiving notice of the updated terms: Albadwi, Bogopoliskiy, Caldwell, Campbell, Garnica, Luong, Rehman, Samra, Simard, and Wolie. *See supra* pp. 3-4. Individualized email notice of a terms-of-service update is enough to bind plaintiffs to the updated terms when the plaintiff continues to use the service after receiving the notice. *See, e.g.*, *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (Donato, J.) (explaining that "individualized notice" of a terms of service update "in combination with a user's continued use [of the defendant's platform] is enough for notice and assent"); *Webber v. Uber Techs., Inc.*, No. 18-cv-2941, 2018 WL 10151934, at *4 (C.D. Cal. Sept. 5, 2018) ("Courts have found that when consumers receive emails such as this one, continued use of the service or product constitutes assent to the updated terms."). These ten Plaintiffs received an individualized email notifying them of the change in the terms of service, and they continued to schedule and perform deliveries after receiving that notice. Hawrysz Decl. ¶¶ 37-47; *id.*, Ex. E. By continuing to use the Flex App after receiving the email, Plaintiffs agreed to be bound by the Second TOS.

Lastly, three of those ten Plaintiffs—Albadwi, Bogopolskiy, and Rehman—also agreed to the Third TOS. They did so by clicking their acceptance to the Third TOS within the Amazon Flex app. *See supra* p. 4.

The arbitration provisions in all three TOS versions apply to this dispute. The provisions broadly apply to all claims or disputes that arise out of or relate in any way to Plaintiffs' participation in the Amazon Flex program or performance of services. First TOS § 11(a); Second TOS § 11(a); Third TOS § 11(a). These broad provisions readily cover Plaintiffs' claims stemming from alleged violations of wage and hour laws during Plaintiffs' participation in the Amazon Flex program. Compl. ¶ 39; *see also* Compl. ¶ 28.

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

AMAZON'S MOTION TO
COMPEL ARBITRATION

1  For the Plaintiffs who agreed to the Second and Third TOS, they also agreed to arbitrate a

2  wide range of disputes about arbitrability.  Those agreements' adoption of the AAA Commercial

3  Arbitration Rules is itself a clear and unmistakable delegation of arbitrability disputes to the arbi-

4  trator.  Second TOS § 11(k); Third TOS § 11(i); *see, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125,

5  1130 (9th Cir. 2015); *Carder v. Carl M. Freeman Cmtys., LLC*, Civ. No. 3319-VCP, 2009 WL

6  106510, at *6 (Del. Ch. Jan. 5, 2009); *Rodriguez v. Am. Techs., Inc.*, 39 Cal. Rptr. 437, 446 (Ct.

7  App. 2006).  Other language in the agreement likewise reflects that the arbitrator must resolve

8  disputes over "the arbitrability of claims" under Section 11(a).  Second TOS § 11(*l*); Third TOS

9  § 11(j).  Any arbitrability challenge within the scope of this delegation would therefore be reserved

10  for the arbitrator.

### 2.  Plaintiffs' Agreements to Arbitrate Are Enforceable.

12  Because Plaintiffs agreed to arbitrate their disputes, the only remaining question is whether

13  there is some reason not to enforce their arbitration agreements.  There is not.  The agreements are

14  enforceable under the FAA, state law, and this Court's inherent powers.

### a.  The FAA Requires Enforcing Plaintiffs' Agreements.

16  In all three TOS versions, the parties specifically selected the FAA and its "liberal federal

17  policy favoring arbitration agreements" to govern their arbitration agreements.  *Epic Sys. Corp. v.*

18  *Lewis*, 138 S. Ct. 1612, 1621 (2018); *see* First TOS § 12; Second TOS § 12; Third TOS § 12.  Under

19  the FAA, an arbitration agreement in "a contract evidencing a transaction involving commerce . . .

20  shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

21  the revocation of any contract."  9 U.S.C. § 2.  When the FAA applies, courts must compel arbitra-

22  tion according to the agreement's terms and stay (or dismiss) the litigation.  *Id.* §§ 3-4; *see Dean*

23  *Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  But the FAA exempts "contracts of em-

24  ployment of seamen, railroad employees, or any other class of workers engaged in foreign or inter-

25  state commerce."  9 U.S.C. § 1.  Parties "opposing arbitration under the FAA" bear "the burden of

26  demonstrating the exemption" applies to them—and as local delivery drivers, Plaintiffs cannot do

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

AMAZON'S MOTION TO
COMPEL ARBITRATION

1   so.  *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 WL 946112, at *3 (N.D.

2   Cal. Mar. 14, 2016).

3        To be sure, in *Rittmann* a divided Ninth Circuit panel concluded that the Amazon Flex driver

4   plaintiffs at issue in that prior motion were exempt workers under Section 1 because they deliver

5   "goods that remain in the stream of interstate commerce until they are delivered."  971 F.3d at 915.

6   Amazon respectfully continues to believe that *Rittmann* was wrongly decided and conflicts with

7   the best reading of the FAA.  *See, e.g.*, *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1350 (11th Cir.

8   2021) (endorsing the dissent's position in *Rittmann*); *Harper v. Amazon.com Servs., Inc.*, 12 F.4th

9   287, 302 (3d Cir. 2021) (Matey, J., concurring) (same).  But setting that aside, *Rittmann* still does

10  not control because this Court now faces a different factual record.  *See, e.g.*, *Castillo v. CleanNet*

11  *USA, Inc.*, 358 F. Supp. 3d 912, 943 (N.D. Cal. 2018) (justifying different outcomes on motions to

12  compel arbitration concerning "the same arbitration agreement" because "[h]ere, the record is dif-

13  ferent").

14       First, the record here shows that Amazon Flex drivers do not just deliver packages that

15  originated from other states, but also deliver groceries and local-store orders that would not be

16  exempt interstate transportation work even under the reasoning of *Rittmann*.  *See* Hawrysz Decl.

17  ¶¶ 6-7.  For example, Amazon Flex drivers today have many options to sign up for delivery blocks

18  to deliver food and groceries through the Prime Now and Amazon Fresh services, as well as store

19  orders from Whole Foods Market or other local stores.  *Id.*; *see also* https://flex.amazon.com/faq.

20  More than that, the record shows that there is no obligation with Amazon Flex to perform any

21  minimum amount of deliveries, and if they wish, Amazon Flex drivers may sign up exclusively for

22  grocery or local store deliveries.  Hawrysz Decl. ¶ 8; *see also* First TOS § 1(b) ("This Agreement

23  requires no minimum amount or frequency of Services."); Second TOS § 1(b) (same); Third TOS

24  § 1(b) (same).  When Amazon moved to compel arbitration in *Rittmann* in 2016, however, Amazon

25  had not yet acquired Whole Foods and did not offer Whole Foods delivery options.  Hawrysz Decl.

26  ¶ 6.  Since then, Delivery Partners have performed increasingly more food and grocery deliveries.

27  *Id.*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

AMAZON'S MOTION TO
COMPEL ARBITRATION

1      In short, the nature of Amazon Flex delivery is not the same as it was in 2016, and the

2  differences are dispositive when it comes to applying the Ninth Circuit's interpretation of the

3  FAA's exemption.  Recent Ninth Circuit precedent states that the key question is whether interstate

4  transportation is "a 'central part of'" what the class of workers is engaged to do.  *Capriole v. Uber*

5  *Techs., Inc.*, 7 F.4th 854, 865 (9th Cir. 2021) (quoting *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d

6  798, 801 (7th Cir. 2020)).  For this reason, work that "is not defined by its engagement in interstate

7  commerce does not qualify for the exemption just because [the worker] occasionally performs that

8  kind of work."  *Id.* (quoting *Wallace*, 970 F.3d at 800).  Even if local delivery of interstate goods

9  sometimes qualifies as interstate transportation work according to *Rittmann*, such transportation is

10  not "intrinsic to" the Amazon Flex program, as the record here attests.  *Id.* at 866.  Again, Amazon

11  Flex drivers are under no obligation to perform deliveries of interstate packages and can choose to

12  perform deliveries of local store orders or groceries only.

13      And that type of work, courts widely hold, is not exempt interstate transportation work.  In

14  *Wallace*, for example, the Seventh Circuit held that delivering orders from local restaurants was

15  not interstate transportation under the FAA, and the Ninth Circuit has expressed agreement with

16  that reasoning.  *Wallace*, 970 F.3d at 802; *see Rittmann*, 971 F.3d at 916-17; *In re Grice*, 974 F.3d

17  950, 956 (9th Cir. 2020); *Capriole*, 7 F.4th at 861 n.7.  Courts have recognized that *Wallace*'s

18  reasoning applies equally to workers who deliver groceries and workers who deliver other sorts of

19  goods that typically start their journey, at the time of purchase, in the same state as the purchaser.

20  *See, e.g.*, *O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 287 (N.D. Ill. 2020) (holding, under

21  *Wallace*, that Instacart "drivers who deliver food purchased over the internet from a grocery store

22  differ in no material way from drivers who pick up food purchased over the web from a restaurant");

23  *Bean v. ES Partners, Inc.*, No. 20-62047-CIV, 2021 WL 1239899, at *7 (S.D. Fla. Apr. 4, 2021)

24  (holding, under *Wallace* and *Rittmann*, that "same day" delivery drivers who "pick up from local

25  warehouses, merchants, or pharmacies, and then deliver to customers within [a single state]" are

26  not exempt from the FAA).

27  / / /

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

AMAZON'S MOTION TO
COMPEL ARBITRATION

Because Amazon Flex drivers are free to focus on deliveries of these locally originating goods, the Amazon Flex program "is not defined by its engagement in interstate commerce" even under *Rittmann*, and interstate transportation is not "a 'central part of'" the Amazon Flex program. *Capriole*, 7 F.4th at 865 (quoting *Wallace*, 970 F.3d at 800-01).  The FAA therefore applies to Plaintiffs' agreements to arbitrate on an individual basis and requires those agreements' enforcement.

But if the Court has questions about the applicability of the FAA in light of *Rittmann*, it should defer ruling on Amazon's request for arbitration for the reasons given in Amazon's concurrently filed stay motion.  The Supreme Court recently granted certiorari to analyze the scope of the FAA's applicability to workers who do not cross state lines, *see Sw. Airlines Co. v. Saxon*, No. 21-309 (U.S. Dec. 10, 2021), and the Court is likely to provide authoritative guidance on this issue by the end of its current term in June 2022.

### b.     State Law Requires Enforcing Plaintiffs' Agreements.

Regardless of whether Plaintiffs' arbitration agreements are exempt from the FAA, state law requires their enforcement.  In fact, the Court need not even resolve whether the FAA applies, because Plaintiffs must arbitrate his claims under state law even if the FAA is inapplicable.  *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000) (even if it is questionable whether the FAA applies, a plaintiff who agreed to an arbitration clause "would still be required under the law of contract to arbitrate in accordance with the clause").  The Court can bypass any uncertainty over the FAA's applicability if the parties' arbitration agreements are enforceable under state law, and indeed the Court *should* bypass FAA uncertainty in such circumstances if resolving the uncertainty would require discovery.  *Harper*, 12 F.4th at 295-96 ("[S]tate law arbitration questions must be resolved before turning to questions of fact and discovery."); *Diaz v. Mich. Logistics Inc.*, 167 F. Supp. 3d 375, 380-81 (E.D.N.Y. 2016) (bypassing dispute over the FAA exemption because arbitration agreement was enforceable under state law).  Here, the ten Plaintiffs who agreed to the Second or Third TOS are required to arbitrate under Delaware law and the six Plaintiffs who only

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

AMAZON'S MOTION TO
COMPEL ARBITRATION

1    agreed to the First TOS are required to arbitrate under Washington law.  Even apart from the con-

2    tracts' choices of Delaware and Washington law, moreover, all Plaintiffs—whether they agreed to

3    the First, Second, or Third TOS—are required to arbitrate under California law.

4                    **(1)    Delaware Law Applies to the Second and Third TOS.**

5            The Second and Third TOS specify that Delaware law governs arbitration under Section 11

6    in the FAA's absence:  "[i]f, for any reason, the [FAA] is held by a court of competent jurisdiction

7    not to apply to Section 11 of this Agreement, the law of the state of Delaware will govern Section

8    11."  Second TOS § 12; *accord* Third TOS § 12.  Because these updated agreements, which were

9    not at issue in *Rittmann*, clearly select a state's arbitration law as a possible fallback to the FAA,

10   that state law requires enforcing Plaintiffs' arbitration agreement even if the FAA exemption ap-

11   plies.[1]

12           Courts in these circumstances widely enforce arbitration provisions under the parties' cho-

13   sen body of state arbitration law.  *See, e.g.*, *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596

14   (3d Cir. 2004) (enforcing an arbitration agreement under Washington state law despite the court's

15   application of the section 1 exemption because there was "no reason to release the parties from

16   their own agreement" and because "the effect of Section 1 is merely to leave the arbitrability of

17   disputes in the excluded categories as if the [FAA] had never been enacted" (citation omitted));

18   *Abram v. C.R. Eng., Inc.*, No. 20-cv-764, 2020 WL 5077373, at *7 (C.D. Cal. June 23, 2020) (re-

19   affirming decision to compel arbitration under Utah law, despite district court ruling in *Rittmann*

20

---

21   [1] Were these Plaintiffs to challenge using the Second TOS and Third TOS's choice-of-law provi-
22   sion to compel arbitration, that challenge would be reserved for the arbitrator in accordance with
     those contracts' agreements to arbitrate arbitrability.  *See, e.g.*, *Parker v. New Prime, Inc.*, No. 20-
23   cv-3298, 2020 WL 6143596, at *4 (C.D. Cal. June 9, 2020) (enforcing delegation provision and
     compelling arbitration under state law without resolving challenge to choice-of-law provision, even
24   though the plaintiff was exempt from the FAA); *Ratajesak v. New Prime, Inc.*, No. 18-cv-9396,
     2019 WL 1771659, at *4-6 (C.D. Cal. Mar. 20, 2019) (same); *supra* pp. 10.  Even if the parties had
25   not agreed to arbitrate this arbitrability question, California conflict-of-laws principles—which
     govern here because this case was filed in California, *see, e.g.*, *Ferens v. John Deere Co.*, 494 U.S.
26   516, 519 (1990)—would respect the parties' choice of Delaware law.  Dkt. 1-2, ¶ 2; *see, e.g.*, *Gar-
     densensor, Inc. v. Stanley Black & Decker, Inc.*, No. 12-cv-3922, 2012 WL 12925714, at *3 (N.D.
27   Cal. Oct. 25, 2012).  California courts "respect choice-of-law provisions" if the chosen state "has a
     substantial relationship to the parties."  *Id.* at *4.  That condition is met because one of the parties
28   is "incorporated in the state of Delaware."  *Id.*

14

and the plaintiff's status as an exempt transportation worker, because the contracting parties expressly chose Utah arbitration law as a fallback to the FAA).

This Court should do likewise and enforce the Second TOS and Third TOS's choice-of-law provision selecting Delaware law.  Ten Plaintiffs assented to enforcing their arbitration agreements through Delaware law, and Delaware law requires enforcing the arbitration agreements.  The Delaware Supreme Court has long stressed that "the public policy of [Delaware] favors the resolution of disputes through arbitration." *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989) (citation omitted).  Reflecting that policy, Delaware "enacted a Uniform Arbitration Act" that is "similar to the [FAA]." *Id.* (citing DEL. CODE tit. 10, §§ 5701-5725).  The Delaware Uniform Arbitration Act "provides that 'a written agreement to submit to arbitration any controversy existing at or arising after the effective date of the agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting DEL. CODE tit. 10, § 5701).  And "[a]ny doubt as to arbitrability is to be resolved in favor of arbitration." *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1999).  Where, as here, "there is no substantial question whether a valid agreement to arbitrate in [Delaware] was made or complied with the Court shall order the parties to proceed with arbitration." DEL. CODE tit. 10, § 5703.

Delaware law does not exempt any transportation workers from arbitration, nor is there any other basis for declining to enforce these arbitration provisions through Delaware law.  Plaintiffs do not have any colorable argument that the arbitration provision is unconscionable:  even when an arbitration provision is presented on a "take-it-or-leave-it" basis, there is nothing inherently unfair about an arbitration provision. *Graham*, 565 A.2d at 912-13.  As the Delaware Supreme Court remarked, "it would be highly inappropriate if this Court were to find a contract unconscionable because it adheres to the declared public policy of this State." *Id.* at 913.  There is no basis under Delaware law not to enforce the arbitration provision.

Nor is there any valid argument that the Second and Third TOS arbitration provisions do not apply to already-accrued claims.  Even if some of Plaintiffs' claims accrued before the Second

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

AMAZON'S MOTION TO
COMPEL ARBITRATION

or Third TOS went into effect, the arbitration provisions in those agreements are broad and apply both prospectively and to already-existing disputes.  Second TOS § 11(a); Third TOS § 11(a).  The Ninth Circuit has held that a different Amazon arbitration agreement with the same "any dispute or claim" language "is not limited to prospective disagreements" and compelled the plaintiff to arbitrate claims that arose before he entered the agreement.  *See Peters v. Amazon Servs., LLC*, 669 F. App'x 487, 488 (9th Cir. 2016); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1178 (W.D. Wash. 2014) (same); *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) ("any dispute" provisions are "broad and far reaching" in scope); *see also Mohammad v. T-Mobile USA, Inc.*, 18-CV-00405-KJM-DB, 2018 WL 6249910, at *7 (E.D. Cal. Nov. 29, 2018) ("Under Ninth Circuit law, this language is sufficiently broad to apply retroactively to pre-existing claims.").  In any event, any dispute over the scope or coverage of the arbitration agreement would be reserved for the arbitrator under the delegation provisions in the Second and Third TOS.  *See, e.g.*, *Brennan*, 796 F.3d at 1130 (identifying "whether the agreement covers the dispute" as a gateway question of arbitrability that parties can delegate to an arbitrator); *Carder*, 2009 WL 106510, at *8 ("[T]he question of whether Carder's claims fall within the scope of the arbitration clause must be decided by the arbitrator, not this Court.").

## (2)   Washington Law Applies to the First TOS.

The First TOS contains the same language that was at issue in *Rittmann*.  The choice-of-law provision selects Washington law to govern the TOS "except for Section 11, which is governed by the Federal Arbitration Act and applicable federal law."  First TOS § 12.  Amazon argued in *Rittmann* that the agreement's severability clause required the courts to excise this whole phrase, beginning with "except for," if the FAA is inapplicable.  *Rittmann*, 971 F.3d at 920.  The Ninth Circuit rejected that argument, holding that doing so would "violate the principle that [courts] are not free to rewrite [a] contract under the guise of severability."  *Id.*  Amazon disagrees with that holding, which conflicts with the First Circuit's evaluation of the same clause, *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 27 (1st Cir. 2020), but understands that this Court is bound to follow the Ninth Circuit decision on this issue.

AMAZON'S MOTION TO
COMPEL ARBITRATION

1    Still, for the six Plaintiffs who accepted the First TOS only—Ellis, Felix, Friedman, Mar-

2    celo, Sales, and Shaik—the Court should nonetheless compel them to arbitration under Washington

3    law for a reason that *Rittmann* did not address.  The first page of the First TOS, which precedes

4    Section 1 of the agreement, includes its own mutual promise between the parties to arbitrate dis-

5    putes.  First TOS at 1.  With capital letters and bolded font, this part of the agreement says, "YOU

6    AND AMAZON AGREE TO RESOLVE DISPUTES BETWEEN YOU AND AMAZON ON AN

7    INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, UNLESS YOU

8    OPT OUT OF ARBITRATION WITHIN 14 CALENDAR DAYS OF THE EFFECTIVE DATE

9    OF THIS AGREEMENT, AS DESCRIBED BELOW IN SECTION 11."  *Id.*  This first-page agree-

10   ment to arbitrate is not excluded from the choice-of-law provision's general selection of Washing-

11   ton law, for that exclusion is expressly limited to "Section 11."  First TOS § 12.  As a result, the

12   First TOS does not have to be "rewritten" for Washington law to apply to this page of the agree-

13   ment.  *Rittmann*, 971 F.3d at 920.  Section 12's plain terms support applying Washington law to

14   the arbitration provision on the agreement's first page.

15   And under Washington law, like the FAA, "[a]n agreement contained in a record to submit

16   to arbitration any existing or subsequent controversy arising between the parties to the agreement

17   is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the

18   revocation of contract."  WASH. REV. CODE § 7.04A.060(1).  "Washington law generally favors the

19   use of alternative dispute resolution such as arbitration where the parties agree by contract to submit

20   their disputes to an arbitrator."  *Davidson v. Hensen*, 954 P.2d 1327, 1330 (Wash. 1998).  Under

21   Washington law, the arbitration agreement in the First TOS is enforceable.  *See Palko*, 372 F.3d

22   596 (enforcing purportedly FAA-exempt contract under Washington law).

23                          **(3)    Alternatively, California Law Requires Enforcement.**

24   Were this Court to disregard the parties' express choice of Delaware law in the Second and

25   Third TOS or not apply Washington law to the First TOS, California law would still require en-

26   forcing Plaintiffs' agreements to arbitrate under either the First TOS, Second TOS, or Third TOS.

27   *See, e.g., Maldonado v. Sys. Servs. of Am., Inc.*, No. 09-cv-542, 2009 WL 10675793, at *2 (C.D.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

AMAZON'S MOTION TO
COMPEL ARBITRATION

1   Cal. June 18, 2009) (compelling arbitration under California law because FAA exemption applied).

2   "[A]s a number of courts have determined, an arbitration clause can be enforced under state law

3   even in the absence of a state law contingency provision." *Kauffman v. U-Haul Int'l, Inc.*, No. 16-

4   cv-4580, 2018 WL 4094959, at *5 (E.D. Pa. Aug. 28, 2018).  "[I]f the federal act doesn't apply,

5   the agreement to arbitrate remains viable, and the only question becomes what state's law applies

6   to the contract to arbitrate." *Atwood v. Rent-A-Ctr. E., Inc.*, No. 15-cv-1023, 2016 WL 2766656,

7   at *3 (S.D. Ill. May 13, 2016).  Here, determining the applicable state law turns on the conflict-of-

8   laws principles of California, the state where this Court sits. *See, e.g.*, *Klaxon Co. v. Stentor Elec-

9   *tric Mfg. Co.*, 313 U.S. 487, 496 (1941).  And those principles would select California law if the

10  choice of law provisions in any of the TOS versions are ineffective or inapplicable.

11      In particular, when there is no effective choice-of-law provision in a contract, California

12  conflict-of-laws principles determine the governing law using the test from the *Restatement (Sec-

13  ond) of Conflict of Laws* § 188 (1971) (RESTATEMENT).  *See, e.g.*, *Stonewall Surplus Lines Ins. Co.

14  v. Johnson Controls, Inc.*, 17 Cal. Rptr. 2d 713, 718 (Cal. Ct. App. 1993).  For contract disputes,

15  that test commonly points to the place of contracting, negotiation, or performance.  *See* RESTATE-

16  MENT § 188(2).  For Plaintiffs' agreements, that would likely mean California, where Plaintiffs

17  resided and signed up to perform delivery services. *See* Hawrysz Decl. ¶¶ 20-35.[2]

18      Like the Delaware Uniform Arbitration Act and the Washington Revised Code, under the

19  California Arbitration Act ("CAA"), "[a] written agreement to submit to arbitration an existing

20  controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such

---

[2] The test in Restatement § 188 could also point to the law of either Washington, where Amazon is headquartered, or Delaware, where Amazon is incorporated, but that would not change the result because, as already explained, the agreements would be enforceable under Washington or Delaware law as well.  The conflict-of-laws question here is therefore "academic as the arbitration laws of [these] states are substantially the same." *Adams v. Parts Distribution Xpress, Inc.*, No. 20-cv-697, 2021 WL 1088231, at *5 n.14 (E.D. Pa. Mar. 22, 2021) (compelling arbitration under Pennsylvania law on the assumption that the plaintiff was exempt from the FAA, while noting that Florida law would support the same result); *see also* WASH. REV. CODE. § 7.04A.060(1) ("An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of contract."); *Davidson v. Hensen*, 954 P.2d 1327, 1330 (Wash. 1998) ("Washington law generally favors the use of alternative dispute resolution such as arbitration where the parties agree by contract to submit their disputes to an arbitrator."); *Palcko*, 372 F.3d 596 (enforcing purportedly FAA-exempt contract under Washington law).

18

grounds as exist for the revocation of any contract." CAL. CIV. PROC. CODE § 1281.  "Through this detailed statutory scheme, the Legislature has expressed a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Vandenberg v. Superior Court*, 982 P.2d 229, 238 (Cal. 1999) (quoting *Moncharsh v. Heily & Blase*, 832 P.2d 899, 902 (Cal. 1992)); *see Maldonado*, 2009 WL 10675793, at *2-3 (enforcing purportedly FAA-exempt contract under California law).  Notably, California law does not require an arbitration agreement to "expressly refer to California law" to be enforceable under the CAA.  *Ruiz v. Sysco Food Servs.*, 18 Cal. Rptr. 3d 700, 709, 712-14 (Cal. Ct. App. 2004) (bypassing dispute over the FAA's applicability and enforcing agreement through the CAA).

For this reason, under any version of the TOS, this Court should still compel Plaintiffs' claims to arbitration.  Although the Ninth Circuit ruled in *Rittmann* that the choice-of-law language in Section 12 of the First TOS does not effectively choose Washington law to apply to the Section 11 arbitration provision if the FAA is inapplicable, 971 F.3d at 920, the court never grappled with the Restatement's instructions for figuring out what law to apply when a contract lacks an effective choice of law provision.  *See* RESTATEMENT § 188.  *Rittmann* "did not expressly address this issue" and so it remains an open question for this Court to address.  *E. & J. Gallo Winery v. EnCana Corp.*, 503 F.3d 1027, 1046 (9th Cir. 2007) ("[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having [been] so decided as to constitute precedents." (citation omitted)).  After all, contracts are not void or unenforceable merely because they lack an effective choice of law.  *See Chappel*, 232 F.3d at 725.  "[T]he only question becomes what state's law applies." *Atwood*, 2016 WL 2766656, at *3.  Under Restatement § 188, the answer in this case would be California law, whose public policy supports arbitration.

As with Delaware and Washington law, Plaintiffs cannot overcome California's pro-arbitration policy through any sort of unconscionability argument.  Under California law, a party opposing arbitration on such grounds bears the burden of proof and "must demonstrate that the con-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

AMAZON'S MOTION TO
COMPEL ARBITRATION

1    tract as a whole or a specific clause in the contract is both procedurally and substantively uncon-

2    scionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017); *see also Armen-*

3    *dariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000).[3]  Plaintiffs cannot show

4    that either form of unconscionability exists here, let alone that both forms exist and justify refusing

5    to enforce the arbitration agreements.  As in Delaware, it is not enough to argue that an agreement

6    was presented "on a take-it-or-leave-it basis." *Poublon*, 846 F.3d at 1261.  And, notably, Plaintiffs

7    are not asserting any putative class claims.

8         In short, all the potentially applicable state arbitration laws support enforcing Plaintiffs'

9    agreements to arbitrate even if they belong to a class of workers that falls outside the FAA.

10            **c.    The Court's Inherent Powers Provide an Independent Basis for
               Enforcing Plaintiffs' Arbitration Agreements.**

11
12         Finally, this Court has inherent power to enforce the parties' agreements to arbitrate.  The

      Ninth Circuit has previously held that it is appropriate for a federal district court to dismiss a com-

13    plaint filed by a plaintiff who agreed to arbitrate even if that agreement is exempt from the FAA.

14    *Chappel*, 232 F.3d at 725.  The same outcome would be appropriate here.

15         In addition, "the power to stay proceedings is incidental to the power inherent in every court

16    to control the disposition of the causes on its docket with economy of time and effort for itself, for

17    counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  That power authorizes

18    a stay regardless of whether a statute authorizes enforcement of the arbitration agreement:  "a stay

19    of proceedings pending arbitration . . . is within the inherent power of a (district) court and does not

20    require statutory authority." *Mason-Dixon Lines, Inc. v. Local Union No. 560*, 443 F.2d 807, 809

21    (3d Cir. 1971) (citation omitted).  The Court should therefore "postpone action on [Plaintiffs']

22    complaint pending the outcome of a procedure for resolving such a dispute upon which the parties

23    have agreed." *Id.* (entering stay even assuming the arbitration agreement was exempt from the

24    FAA).  Although the Supreme Court made clear in *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537,

25

26    _____

27    [3] Amazon contends that *Armendariz* is inapplicable here because it is limited to arbitration agree-
      ments entered into in the context of employer-employee relationships. *See Armendariz*, 6 P.3d at
28    674.  Plaintiffs' relationship with Amazon was that of an independent contractor, not an em-
      ployee, as all three versions of the TOS attest.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

AMAZON'S MOTION TO
COMPEL ARBITRATION

543 (2019), that courts must decide for themselves whether the FAA exemption applies to an agreement, it expressly left open the possibility that a district court could use its "inherent authority to stay litigation in favor of an alternative dispute resolution mechanism of the parties' choosing."

Whether under the FAA, state law, or the Court's inherent powers, the Court should uphold Plaintiffs' agreements to arbitrate this dispute. *See Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1472 (D.C. Cir. 1997) ("[W]e have little doubt that, even if an arbitration agreement is outside the FAA, the agreement still may be enforced[.]").[4]

**B.    Alternatively, the First-to-File Rule Requires a Transfer, Dismissal, or Stay of This Action.**

Alternatively, if the Court does not compel arbitration, it should exercise its authority under the first-to-file rule to transfer, dismiss, or stay this action pending the resolution of *Rittmann* and other earlier-filed actions. Plaintiffs' complaint has significant overlap with those earlier-filed actions, which pursue the same FLSA and California law claims against the same defendants on behalf of putative classes of California Amazon Flex drivers that would encompass Plaintiffs.

The first-to-file rule "allows the Court to decline subject matter jurisdiction when a complaint involving the same parties and issues had been previously filed." *Arakelian v. Mercedes-Benz USA, LLC*, No. CV 17-06240, 2018 WL 6422649, at *1 (C.D. Cal. June 4, 2018) (staying all claims except one because the first-filed action did not assert that claim's theory of recovery). "The doctrine allows district courts flexibility to dismiss, stay, or transfer a case to avoid duplicative litigation and to conserve judicial resources." *Ortiz v. Walmart, Inc.*, No. 20-CV-05052, 2020 WL 5835323, at *2 (C.D. Cal. Sept. 18, 2020) (dismissing later action because the later-filed action "involve[d] the same causes of action, the same Defendants, the same location, the same employees, and the same core issues as in the [first-filed] action").

Here, other Ninth Circuit district courts, including in this District, have already acknowledged the applicability of the first-to-file rule in agreeing to transfer similar actions to the Western

---

[4] If the Court compels Plaintiffs to arbitrate their claims, it should stay this litigation pending the conclusion of the arbitration. See 9 U.S.C. § 3; DEL. CODE tit. 10, § 5703; CAL. CIV. PROC. CODE § 1281.4; *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014) (explaining the Ninth Circuit's "preference for staying an action pending arbitration rather than dismissing it").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

AMAZON'S MOTION TO
COMPEL ARBITRATION

District of Washington.  This matter and the *Rittmann*, *Keller/Ponce*, *Diaz*, and *Puentes* matters possess sufficient similarity of parties and issues to warrant application of the first-to-file rule given that:  (1) Plaintiffs are members of the proposed putative classes in those cases, (2) the defendants are the same, and (3) the disputed issues overlap significantly, including the core theory of liability in all the cases that Amazon Flex delivery partners are misclassified as independent contractors. Indeed, a comparison of this action to the earlier-filed actions shows virtually complete overlap between the cases:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

AMAZON'S MOTION TO
COMPEL ARBITRATION

| Date Filed (Factor 1) | Putative Class (Factor 2) | Defendants (Factor 2) | Claims (Factor 3) |
|---|---|---|---|
| *Rittmann*<br>C16-1554-JCC<br>Oct. 4, 2016 | "[A]ll delivery drivers who have contracted directly with Amazon to provide delivery services in California" since October 4, 2013. | Amazon.com, Inc.<br><br>Amazon Logistics, Inc. | • Reimbursement<br>• Minimum wage<br>• Meal and rest breaks<br>• Overtime<br>• Wage statements<br>• Untimely wages<br>• Paid sick leave |
| *Keller*<br>C19-1719-JCC<br>Mar. 13, 2017 | "All persons who performed delivery work through the Amazon Flex app in the State of California . . . from March 9, 2013 to the present." | Amazon.com, Inc.<br><br>Amazon Logistics, Inc. | • Reimbursement<br>• Minimum wage<br>• Meal and rest breaks<br>• Overtime<br>• Wage statements<br>• Untimely wages |
| *Ponce*<br>C19-1718-JCC<br>Nov. 1, 2018 | "All persons who worked as delivery drivers through Amazon Flex app in the State of California from September 2014 to the present." | Amazon Logistics, Inc.<br><br>Amazon.com Services, Inc. | • Reimbursement<br>• Minimum wage<br>• Meal and rest breaks<br>• Overtime<br>• Wage statements<br>• Untimely wages |
| *Diaz*<br>C21-0419-JCC<br>Aug. 21, 2020 | All "California residents who are or have been employed by Amazon . . . in California . . . who signed independent contractor agreements" since August 21, 2016. | Amazon.com, Inc.<br><br>Amazon Logistics, Inc. | • Reimbursement<br>• Minimum wage<br>• Meal and rest breaks<br>• Wage statements<br>• Untimely wages<br>• Unlawful deductions |
| *Puentes*<br>C21-1370-JCC<br>Nov. 13, 2020 | All "non-exempt employees . . . employed by Defendants . . . in California from the date four years prior to the filing of this Complaint through the date of the trial in this action" | Amazon.com Services LLC<br><br>Amazon Flex | • Reimbursement<br>• Minimum wage<br>• Meal and rest breaks<br>• Wage statements<br>• Untimely wages |
| *Marcelo*<br><br>Oct. 5, 2021 | Individual plaintiffs who signed up to perform Amazon Flex deliveries starting on September 27, 2016 | Amazon.com, Inc.<br><br>Amazon Logistics, Inc. | • Reimbursement<br>• Minimum wage<br>• Meal and rest breaks<br>• Overtime<br>• Wage statements<br>• Untimely wages<br>• Unlawful deductions<br>• |

Given the earlier-filed cases and overlap between them, this Court should exercise its authority under the first-to-file rule to dismiss Plaintiffs' claims altogether or at a minimum stay them

pending resolution of the *Rittmann* litigation or, like the district courts in *Keller/Ponce* and *Puentes*, should transfer this action to the Western District of Washington with *Rittmann*. *Keller*, 2019 WL 13113043, at *2; *Puentes*, 2021 WL 5984867, at *3. And again, even apart from the first-to-file rule, this Court has inherent authority to issue stays as part of its power to effectively manage its docket for the sake of judicial economy. *E.g.*, *Landis*, 299 U.S. at 254. Whether under the first-to-file rule or the Court's inherent power to manage its docket, the Court should not permit this duplicative action to move forward at the same time as those earlier-filed cases.

## IV.   <u>CONCLUSION</u>

For all these reasons, the Court should compel arbitration, dismiss this action, stay this action, or transfer this action to the Western District of Washington.

Dated:  December 23, 2021

MORGAN, LEWIS & BOCKIUS LLP

By   */s/ Brian D. Fahy*
Max Fischer
Brian D. Berry
Brian D. Fahy
Miranda M. Rowley

Attorneys for Defendants
AMAZON.COM INC and
AMAZON LOGISTICS, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

AMAZON'S MOTION TO
COMPEL ARBITRATION